HAWTHORNE, Justice.
 

 Plaintiff, Lester Wilson, instituted .this suit praying that Mrs. Jacquetta Calvin, from whom he was divorced by a judgment of court, be enjoined and restrained from attempting to collect alimony pendente lite or from enforcing the judgment of the court which awarded alimony to her pendente lite in the sum of $250 a month. After trial on the merits, his suit was dismissed, and he has appealed to this court.
 

 Plaintiff and defendant were married in Bossier Parish, Louisiana, on February 9, 1948, and of this marriage one child was born, who was about two years of age at the time of the trial in the lower court. On April 26, 1949, Mrs. Jacquetta Calvin obtained a judgment of separation from bed and board from her husband, and shortly thereafter a judgment was rendered awarding her alimony pendente lite in the sum of $250 per month. On July 12, 1950, an absolute divorce, based on the judgment of separation from bed and
 
 *456
 
 board previously rendered in favor of the wife, was granted upon petition of the husband.
 

 Plaintiff-appellant contends that his marriage to the defendant was illegal, null, void, and of no effect because it was bigamous, and that consequently the judgment of separation from bed and board, the award to the wife of alimony pendente lite, and the judgment of absolute divorce were all null, void, and of no effect. Plaintiff is seeking to avoid the payment of alimony by collaterally attacking the validity of a judgment of divorce dissolving a prior marriage of the defendant, rendered almost 20 years ago by a court which the record discloses had jurisdiction of the subject matter.
 

 Almost 20 years 'before her marriage to plaintiff, Mrs. Jacquetta Calvin was married to Alvin G. Harkleroad. On December 21, 1929, the district court of Cad-do Parish rendered a judgment in her favor granting to her a separation from bed and board from Harkleroad, and on January 7, 1931, the same court rendered a judgment of absolute divorce in her favor based on the judgment of separation from bed and board previously rendered. After this divorce, Harkleroad, who has been sued as an absentee through a curator ad hoc, obtained a certified copy of the judgment of absolute divorce, and, relying on it, he married again, and children have been born of this marriage. Subsequently to this divorce, Mrs. Jacquetta Calvin married the plaintiff, and one child was bom of their marriage.
 

 In his effort to establish that his marriage to the defendant was bigamous, plaintiff attacks the validity of the separation and divorce judgments rendered in favor of his wife against her first husband, Harkleroad. He argues that the judgment of separation from bed and board and the judgment of absolute divorce in favor of his wife against Harkleroad were absolutely null and void for the reasons (1) that the judgment of separation from bed and board was rendered on confirmation of a default prematurely taken, and (2) that the judgment of absolute divorce was rendered against Harkleroad, an absentee, without the appointment of a curator ad hoc to represent him and consequently without citation, and that the judgment was rendered against Harkleroad upon the filing of an unauthorized answer in his behalf and without a regular default having been entered. He cites and relies on Article 606 of the Code of Practice, which provides that the nullity of' judgments may be demanded for certain vices of form. Among these are “* * * If the defendant has not been legally cited, and has not entered appearance, joined issue, or had not a regular judgment by default taken against him”.
 

 There is a strong public policy against disturbing or declaring invalid a judgment of divorce, especially after a long period of time where the marital status
 
 *458
 
 of innocent parties who relied on the validity of that judgment would be disturbed, and more particularly where a decree would render innocent parties ' guilty of bigamy and cast a cloud on the legitimacy of their children. Walsh v. Walsh, 215 La. 1099, 42 So.2d 860; Rouse v. Rouse, 219 La. 1065, 1073, 55 So.2d 246; Hester v. Hester, 103 Miss. 13, 60 So. 6; Stanley v. Stanley, 201 Miss. 545, 29 So.2d 641. See Jacobs, Attack on Decrees of Divorce by Second Spouses, 15 N.C.L.Rev. 136.
 

 In the present case a judgment as prayed for by the plaintiff would have the effect of making Harkleroad’s remarriage bigamous or invalid, and would at least cast a cloud on the legitimacy of the children born of this marriage, as well as taint with illegitimacy plaintiff’s own child. It is therefore entirely proper for us to consider the effect of a decree invalidating the Harkleroad divorce under the facts and circumstances of the instant case. As stated in the case of Walsh v. Walsh, supra [215 La. 1099, 42 So.2d 865], in which plaintiff was seeking the annulment of a judgment of divorce obtained by her husband, “* * * in a case such as this, where the status of another would be seriously impaired if the judgment of divorce was to be set aside * * *, in dealing with the equities, we are bound to give consideration to the second marriage which was contracted on the faith of the judgment under attack and also scrutinize the motives which prompted plaintiff to seek the annulment of the judgment after her former husband’s death”.
 

 We approach a decision in the instant case mindful of this strong public policy and of the fact that there exists a presumption as to the regularity of the judicial proceedings. Gibson v. Foster, 2 La.Ann. 503; Gentile v. Foley, 3 La.Ann. 146; Vinton Oil & Sulphur Co., Ltd., v. Gray, 135 La. 1049, 66 So. 357; Hamburger, Jr., v. Purcell, 139 La. 456, 71 So. 765; Mariana v. Eureka Homestead Soc., 181 La. 125, 158 So. 642; Logwood v. Logwood, 185 La. 1, 168 So. 310. In order to prevail, plaintiff must therefore establish with certainty the invalidity of the judgment which he attacks.
 

 In Anheuser-Busch Brewing Ass’n v. McGowan, 49 La.Ann. 630, 21 So. 766, this court held that a judgment cannot be impeached in any collateral proceeding on account of errors or irregularities not jurisdictional, and that the premature entry of a default is not an irregularity going to the jurisdiction. That case is therefore decisive of plaintiff’s first contention since under that decision he cannot successfully malee a collateral attack on the judgment of separation from bed and board in the Harkleroad proceedings. See also Hamburger, Jr., v. Purcell, supra; Milliken & Farwell v. Taft Mercantile Co., 7 La.App. 150.
 

 The case of Kelly v. Kelleher, 186 La. 51, 171 So. 569, relied upon and cited by the
 
 *460
 
 appellant, is not pertinent, applicable, or controlling here.
 

 Plaintiff-appellant’s second contention is that the judgment of absolute divorce was rendered against Harkleroad without the appointment of a curator ad hoc to represent him and consequently without citation, and that this judgment was rendered against Harkleroad upon the filing of an unauthorized answer in his behalf and without a regular default having been entered against him.
 

 Defendant, plaintiff in that suit, in her petition for an absolute divorce, after reciting among other things that more than a year had elapsed since the judgment of separation from bed and board had been rendered, and that no reconciliation had taken place between her and Harkleroad, alleged that Harkleroad was an absentee, and that service of process would have to be made on an attorney, a curator ad hoc, appointed to' represent him in the proceedings, with whom the proceedings would have to be carried on contradictorily. On the petition there is an acceptance and acknowledgment of service of the petition and of citation to appear and answer, reserving all legal delays and defenses, signed by a reputable attorney of the Shreveport bar as curator ad hoc. An answer was filed signed by this attorney as curator ad hoc, admitting the existence of the judgment of separation from bed and board but denying all other allegations of plaintiff’s petition for lack of sufficient information. To this answer we find the following oath signed by this attorney before a notary public: “That he is the attorney, or curator ad hoc, for the absent defendant, Alvin G.. Harkleroad, and that all of the allegations of fact contained in the above-answer are true and correct to the best of his knowledge, information and belief, so help him God.” We do not, however, find in the record any order signed by the judge appointing this attorney as curator ad hoc to represent the absent defendant.
 

 In Gibson v. Foster, supra, certain parties to that suit were collaterally attacking a sheriff’s sale, contending that it was invalid because no curator ad hoc had been appointed to represent absent heirs, and that the decree ordering the sale was not rendered contradictorily with an attorney at law as required by law. In that case, as in this, the record did’ not reveal that an appointment of a curator ad hoc had been made. Further, in that case the record did not reveal that citation had issued to any one purporting to be an attorney for the absent heirs. This court found that these contentions were without merit, and in the course of the opinion said:
 

 “The ground taken by the intervenors goes to charge the curator and the court with a culpable neglect of duty, and it must be proved by them, though it involves a negative. * * * * # * * * *
 

 “The presumption of
 
 omnia rite acta,
 
 which attaches to judicial proceedings,
 
 *462
 
 is not to be rebutted by the remote presumption resulting from the evidence adduced in this case. * * * The decree ordering the sale was rendered by a court of competent jurisdiction. We are bound to believe, against, mere probabilities, that the judge did his duty, and to presume, at this late period of time, that all the parties interested had notice of the proceedings. * *
 

 In Mariana v. Eureka Homestead Soc., supra [181 La. 125, 158 So. 644], the purchaser of real property refused to take title because, in previous litigation affecting the property, certain minor heirs had not been served with a citation through a.tutor ad hoc. In the course of that opinion we said:
 

 “More than eleven years has passed since the judgment * * * was rendered, and the property has passed through various hands to its present owner through private and public sales. "* * * he (the purchaser) produced nothing, except the record showing the bare absence of citation. This was not sufficient to shift the burden of proof * * *.
 
 Judicial proceedings are presumed to be regular until the contrary is shown.
 
 [Italics ours.]
 

 * * * * * *
 

 “It would be a most dangerous doctrine for this court to announce that the fact alone that no return could be found among the papers of the suit
 

 showing that the tutor ad hoc or the defendant was ever cited would be
 
 sufficient of itself, without other proof, to destroy the presumption that there had been a legal citation.
 

 * * * * * *
 

 “Our conclusion is that, under the presumption of omnia r.ite acta, the tutor ad hoc was cited, and that the evidence adduced by plaintiff is not sufficient to overcome this presumption.
 

 “The judgment therefore rendered in the suit for specific performance is legal and valid, and is not subject to collateral attack by plaintiff in this case for want of citation to the tutor ad hoc.
 

 “This judgment is final, is rendered by a court of competent jurisdiction, and is a permanent muniment of title. It has remained intact and unquestioned for years. * * * ”
 

 In Logwood v. Logwood, supra, the first wife of deceased, Benjamin Logwood, instituted suit against his second wife, Louella Benedict, alleging that she was entitled to a government pension because the divorce which had been rendered between her and the deceased was an absolute nullity since she had not been cited therein,' and consequently the deceased’s second marriage was an absolute nullity, and as the wife of the deceased she was entitled to the pension. This court in refusing to invalidate the second marriage had this to say [185 La. 1, 168 So. 311]:
 

 
 *464
 
 ‘Tt is settled by ample authority that a judgment rendered against a party who has not been cited and who has not appeared is an absolute nullity, which can be invoked, not only by such party, but also by any one interested. * * *
 

 “But it is also well settled that as against a collateral attack on a judgment of a court of general jurisdiction, it will be presumed,
 
 unless expressly contrary to what is shown by the record, that legal and proper process was issued in the action
 
 and that it was duly and regularly served upon the defendant. * * *
 

 * * * >|S ❖ *
 

 “Unquestionably, the defendant Louella Benedict Logwood acted in good faith in marrying Benjamin Logwood, relying on the judgment of the civil district court decreeing a divorce between Logwood and the plaintiff, Lavinia Gibbs Logwood.
 
 Therefore, her marriage to Logwood ought not be annulled unless it be showit by the clearest and most convincing evidence that the judgment of divorce is invalid.
 

 * * * *
 
 * t-
 

 “The- note of evidence appearing in the divorce suit shows that on the confirmation of the default the petition, citation, and sheriff’s return thereon showing service on the defendant * * * were specifically referred to and offered in evidence. To assume that the recitals of the note of evidence are incorrect and that the judge of the district court proceeded to render a judgment of divorce,
 
 without determining that the defendant had been properly served, would involve the presumption that the judge had failed to do his duty. Such a presumption is never indulged.”
 
 (Italics ours.)
 

 In Gentile v. Foley, supra, there was a direct attack on a judgment of interdiction, in which the one attacking the judgment contended that the person interdicted was not cited and not represented in the proceedings. This court in rejecting plaintiff’s demands said:
 

 “The only evidence of the want of citation and appearance is that, no record evidence of these facts can now be found in the office where it should have been preserved. We have said, in similar cases, that, in consequence of the notorious want of care in the preservation of public records in the country parishes, evidence of this description, when applied to ancient proceedings, raises but a remote presumption, which we would hold to be subordinate to the violent legal presumption that, the judge before whom these proceedings were had did his duty. * * *
 

 “After twenty years, the presumption is made in favor of every judicial tribunal acting within its jurisdiction, that all persons concerned had due no
 
 *466
 
 tice of its proceedings. * * *” • See Vinton Oil & Sulphur Co. v. Gray, supra; Hamburger, Jr., v. Purcell, supra.
 

 The following cases of our sister states are also authority for the proposition that every presumption will be indulged in favor of a judgment that is collaterally attacked: Dean v. Brown, 261 Ky. 593, 88 S.W.2d 298; Sams v. Sams, 242 Ala. 240, 5 So.2d 774; Warren v. Stansbury, 190 Okl. 554, 126 P.2d 251; In re Crouch’s Estate, 191 Okl. 74, 126 P.2d 994; Lee v. Harvey, 195 Okl. 178, 156 P.2d 134; Mack v. Commonwealth, 177 Va. 921, 15 S.E.2d 62; Fletcher v. Superior Court of Sacramento County, 79 Cal.App. 468, 250 P. 195.
 

 In the instant case the presumption that the proceedings were legal and that proper process was issued upon the curator ad hoc duly appointed by the court is applicable, and there is nothing in this record to overcome the presumption.
 

 To assume that no order was issued by the court for the appointment of the curator ad hoc who appeared and answered that suit under oath to the effect that he was the curator, we would have to assume that this attorney, who was an officer of the court, was acting without authority and without legal appointment, and, further, that the trial judge failed in his duty in rendering the judgment which plaintiff herein attacks without the appointment by him of a curator ad hoc. We cannot indulge in any such assumption.
 

 For the reason assigned, the judgment appealed from is affirmed at appellant’s costs.